IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

CHARLES EDWARD TURNER, JR.,    )
                               )
            Petitioner,        )
                               )
        v.                     )        1:08CV884
                               )
REUBEN YOUNG,[1] Secretary,    )
North Carolina Department of   )
Public Safety,                 )
                               )
            Respondent.        )

MEMORANDUM OPINION AND ORDER

BEATY, District Judge.

This matter is before the Court on a Petition under 28 U.S.C. § 2254 for a Writ of

Habeas Corpus ("Habeas Petition") filed by Petitioner Charles Edward Turner, Jr. ("Petitioner"

or "Defendant"). Respondent filed a Motion for Summary Judgment as to the Habeas Petition,

and on April 27, 2009, the United States Magistrate Judge issued a Recommendation

recommending that this Court grant Respondent's Motion for Summary Judgment, deny

Petitioner's § 2254 petition, and dismiss this case. By Order dated September 14, 2009, this

---

[1] When Petitioner Charles Edward Turner, Jr. filed his Petition under 28 U.S.C. § 2254
for a Writ of Habeas Corpus, he named as Respondent Theodis Beck, then Secretary of the
North Carolina Department of Correction ("DOC"). Mr. Beck retired, and Mr. Alvin W.
Keller, Jr., was appointed and sworn in as the Secretary. As of January 1, 2012, however, DOC
was reorganized and became known as the Division of Adult Correction ("DAC" or "the
Division"). Mr. Keller is no longer head of DAC. The Division now falls within the
Department of Public Safety and is headed by the Secretary of Public Safety, Mr. Reuben
Young. See N.C. Gen. Stat. § 143B-259. Accordingly, under Rule 25(d) of the Rules of Civil
Procedure, Mr. Young's name is automatically substituted as Respondent. See Fed. R. Civ. P.
25(d) ("An action does not abate when a public officer who is a party in an official capacity dies,
resigns, or otherwise ceases to hold office while the action is pending. The officer's successor
is automatically substituted as a party.").

Court affirmed and adopted the Recommendation and granted Respondent's Motion for

Summary Judgment in all respects but one. In that regard, the Court noted as follows:

> Petitioner's primary contention in his Habeas Petition and in his Objections is that he entered into a plea agreement with the State in which the State agreed to dismiss certain charges in exchange for his plea, and that the State further agreed to consolidate the charges against him so that he would receive one active sentence of 133 to 169 months. Petitioner has presented a North Carolina "Transcript of Plea" form that clearly includes such a provision. However, at some point prior to Petitioner's plea hearing, the term of the agreement for a consolidated sentence of 133 to 169 months was "whited out" in some fashion, and the "Transcript of Plea" form ultimately filed in Petitioner's case is the altered version. Petitioner contends that he was unaware of this alteration. At the plea hearing, the Judge announced the terms of the Agreement based on what was contained in the altered "Transcript of Plea" form. However, there was no discussion of the alteration of the form or the circumstances surrounding the alteration. Petitioner was ultimately sentenced to three consecutive terms of 133 to 169 months, rather than one term of 133 to 169 months.
> . . .
>
> Petitioner raised his contentions in his state habeas proceedings in a Motion for Appropriate Relief, and requested an evidentiary hearing. In his Motion for Appropriate Relief, Defendant specifically alleged as his first claim for relief, that his "transcript of Plea has been dramatically altered without [his] knowledge," and Defendant attached the original and altered versions of the "Transcript of Plea" form. The MAR Court obtained and reviewed a transcript of the plea hearing, but did not conduct an evidentiary hearing. The MAR Court concluded that "defendant's plea was not induced by any promise other than the plea arrangement," but the MAR Court did not resolve the circumstances surrounding the alteration of the "Transcript of Plea" form.

(Sept. 14, 2009, Ct. Order at 1-2, 3, [Doc. #30]). Based on these circumstances, the Court

concluded that an evidentiary hearing was warranted. As such, the Court denied Respondent's

Motion for Summary Judgment "to the extent that Petitioner contends that his plea was not

voluntary and knowing because it was based on an altered plea agreement, or that he received

ineffective assistance of counsel with respect to the alteration of the plea agreement," and held

an evidentiary hearing regarding those matters on December 17, 2009. (Sept. 14, 2009, Ct.

Order at 3-4, [Doc. #30]).  Thereafter, the parties submitted supplemental briefing on various issues raised in this case.  Petitioner's remaining claims are now ready for the Court's review.

I.    FACTUAL BACKGROUND

A summary of the facts adduced at the evidentiary hearing held before this Court on December 17, 2009, is as follows.  Assistant District Attorney William Wood ("Mr. Wood"), provided appointed counsel for Petitioner, Mr. Neill Jennings ("Mr. Jennings") with an unsigned "Transcript of Plea" form sometime prior to Petitioner's first court date, scheduled for August 27, 2007.  That unsigned "Transcript of Plea" form included an offer that the State would dismiss certain charges and Petitioner would receive a single consolidated sentence of 133 to 169 months in exchange for his guilty plea ("the original Plea Offer"). Mr. Wood testified that he told Mr. Jennings to inform him about whether Petitioner intended to accept the original Plea Offer by August 27, 2007.  Mr. Wood did not hear from Mr. Jennings by August 27, 2007. As such, Mr. Wood scheduled Petitioner for a second court date in September of 2007, but, again, did not hear from Mr. Jennings by the scheduled court date.  Mr. Wood, thereafter, scheduled Petitioner for court dates in early October, late October, and early November, and testified that he did not hear from Mr. Jennings regarding the original Plea Offer at any time during that period.  Mr. Wood testified that he is sure he notified Mr. Jennings of each of Petitioner's court dates and indicated to Mr. Jennings that the original Plea Offer should be accepted on or before those dates.  Mr. Jennings corroborated Mr. Wood's testimony in this regard, stating that he recalled that Mr. Wood left him messages on more than one occasion regarding Petitioner's court dates and the deadlines for Petitioner's acceptance of the original

3

Plea Offer.  Mr. Wood also testified that sometime around the late October court date, he, internally, had made the decision to withdraw the original Plea Offer, but further testified that he did not articulate his intention to withdraw the offer to anyone.  After the early November court date passed, and without hearing anything from Mr. Jennings about Petitioner's acceptance of the original Plea Offer, Mr. Wood scheduled Petitioner for trial, to begin on November 26, 2007, and the State subpoenaed witnesses to appear on that date.

With regard to Mr. Jennings' interactions with Petitioner, Mr Jennings testified that he could not recall when he was appointed to represent Petitioner or when he first met with Petitioner, but testified that his habit and practice would have been to visit with his client prior to any court appearance.  Petitioner testified that he first met with Mr. Jennings on September 5, 2007, at which time Mr. Jennings discussed with Petitioner the terms of the original Plea Offer, including the single consolidated sentence provision of 133 to 169 months.  Petitioner further testified that Mr. Jennings stated that he would return to speak with Petitioner again about the original Plea Offer the following week, but that Mr. Jennings did not return, or otherwise contact Petitioner, until October 25, 2007.  Mr. Jennings did not proffer any testimony to the contrary.  Between September 5, 2007, and October 25, 2007, Petitioner communicated with Victoria Cheek, his girlfriend at the time, and Darrell McCaroll, Petitioner's friend, indicating to each of them that he had been offered and intended to accept the original Plea Offer that would include a sentence of 133 to 169 months, or 11 to 14 years, imprisonment.  On October 25, 2007, Mr. Jennings met with Petitioner and both men signed the "Transcript of Plea" form containing the original Plea Offer.  Mr. Jennings testified that he

believed that the State would no longer accept the signed "Transcript of Plea" form containing the original Plea Offer, but that he intended to present the document to Mr. Wood "as a tactic." (Evidentiary Hr'g Tr. 41:18-19 [Doc. #39]). Mr. Jennings further testified that he recalled informing Petitioner on October 25, 2007, either that the State would not or may not accept the signed "Transcript of Plea" form containing the original Plea Offer. In contrast, Petitioner testified that Mr. Jennings never told him that the State would not or may not accept the signed "Transcript of Plea" form containing the original Plea Offer, and that Petitioner believed he would enter a guilty plea pursuant to that original Plea Offer at his next court appearance. Furthermore, Petitioner testified that Mr. Jennings never made Petitioner aware of any previous court dates or deadlines by which he needed to accept or reject the original Plea Offer.

On November 26, 2007, Mr. Jennings approached Mr. Wood with the "Transcript of Plea" form that Mr. Jennings and Petitioner had signed on October 25, 2007. Although the signed "Transcript of Plea" form was dated October 25, 2007, Mr. Wood testified that he had not seen the document, signed, at any time prior to November 26, 2007. Furthermore, Mr. Wood testified that he had no memory of any conversation with Mr. Jennings between October 25, 2007, and November 26, 2007. Mr. Wood informed Mr. Jennings on November 26, 2007, that the original Plea Offer was no longer available. However, Mr. Wood indicated that he would agree to dismiss similar charges to those set forth in the original Plea Offer, but leave sentencing to the discretion of the Judge. Based on this new plea offer, Mr. Wood took a copy of the unsigned "Transcript of Plea" form containing the original Plea Offer, which Mr. Wood had in his file, and, in the presence of Mr. Jennings, "whited out" the provision setting forth a

5

single consolidated sentence of 133 to 169 months. Petitioner was not present during this transaction. Later that same day, November 26, 2007, after Mr. Wood presented Mr. Jennings with the altered "Transcript of Plea" form wherein the consolidated sentence provision was "whited out," Mr. Jennings met with Petitioner for the first time since October 25, 2007.

At the meeting between Mr. Jennings and Petitioner on November 26, 2007, Mr. Jennings testified that he "discussed the status of the plea that the State had offered [Petitioner]." (Evidentiary Hr'g Tr. 31:8-11, [Doc. #39]). Mr. Jennings further testified that he could not recall all of the specifics of the conversation, but that he did recall that Petitioner asked Mr. Jennings if he thought the Judge would "boxcar" Petitioner or, in other words, impose consecutive sentences. Mr. Jennings testified that he told Petitioner that he did not believe the Judge would impose consecutive sentences, but that he could not guarantee that result, to which Petitioner responded "'Oh, I know how that works. I don't think so either and I'm gonna do it.'" (Evidentiary Hr'g Tr. 31:22-32:3, [Doc. #39]). Mr. Jennings testified that Petitioner then signed the altered "Transcript of Plea" form, which did not contain the consolidated sentence provision. In contrast, Petitioner testified that at the November 26, 2007, meeting, Mr. Jennings first told Petitioner that he presently was scheduled for trial, a fact that surprised Petitioner since he believed that he was scheduled to enter a guilty plea pursuant to the original Plea Offer on that day. Petitioner further testified that Mr. Jennings told him that the State agreed to move forward with a plea agreement, but that the first page, front and back, of the "Transcript of Plea" form needed to be altered to change one of the charges being dismissed. As such, Petitioner testified that he signed the back of the first page, with regard to

6

the change in the charges. Petitioner further testified that he did not review the second page, on which the consolidated sentence provision was originally located, and that the second page did not require his signature. In addition, Petitioner testified that Mr. Jennings never informed him that the consolidated sentence provision was no longer available or that it had been removed from the altered "Transcript of Plea" form that Petitioner signed on November 26, 2007. As such, Petitioner testified that he believed he would be entering a guilty plea the following day, on November 27, 2007, pursuant to the original Plea Offer, with an alteration only pertaining to the charges on the first page of the altered "Transcript of Plea" form. Petitioner further testified that he would not have signed the altered "Transcript of Plea" form on November 26, 2007, if he had known that the consolidated sentence provision was no longer included.

At the plea hearing on November 27, 2007, Petitioner answered the Judge's questions regarding the altered "Transcript of Plea" form from which the Judge was reading. Notably, Petitioner answered "yes" to the Judge's question asking whether the only agreement between the parties was that the State would dismiss certain charges against Petitioner. Petitioner testified at the evidentiary hearing that he was not concerned that the Judge did not say anything expressly about a consolidated sentence provision because Petitioner believed the "Transcript of Plea" form from which the Judge was reading contained that provision, and Petitioner was relying on statements by Mr. Jennings that "everything was all right." (Evidentiary Hr'g Tr. 71:4-24, [Doc. #39]). After the Judge imposed three consecutive terms of 133 to 169 months, Petitioner responded with the following statement: "I'm not – I think I'm doing – I don't know.

7

I don't know what I'm doing right now. I'm doing – ." (Plea Hr'g Tr. 64:24-25, [Doc. #10-3]). Thereafter, Petitioner was removed from the courtroom and, only then, did the state court Judge, out of the presence of Petitioner, clarify the nature of the sentence, that is, that three consecutive terms of 133 to 169 months were being imposed against Petitioner. (Plea Hr'g Tr. 65:7-8, [Doc. #10-3]).

II.    STANDARD OF REVIEW

Before the Court can consider Plaintiff's claims in light of the evidence adduced at the December 17, 2009, evidentiary hearing, and the supplemental briefing submitted by the parties, the Court notes that recent case law requires, as a threshold matter, that this Court determine whether the MAR Court adjudicated Petitioner's habeas claims regarding the alteration of the "Transcript of Plea" form on the merits in order to determine the proper standard of review. Pursuant to Section 2254(d),

> [a]n application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim . . . (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). As such, federal courts reviewing state court habeas determinations made on the merits of the petitioner's claim generally afford great deference to the state court. See Bell v. Jarvis, 236 F.3d 149, 157 (4th. Cir. 2000). However, as the United States Court of Appeals for the Fourth Circuit concluded in 2010, if a state court denies a habeas claim on a record that "ultimately proves to be incomplete," the deference generally afforded to the state

8

court's decision under 28 U.S.C. § 2254(d) may not be appropriate because "judgment on a materially incomplete record is not an adjudication on the merits for purposes of § 2254(d)." Winston v. Kelly ("Winston I"), 592 F.3d 535, 555-56, 557 (4th Cir. 2010) (discussing the fact that the petitioner requested, and was denied, an evidentiary hearing and the opportunity to conduct discovery to develop the factual record underlying his habeas claims). In so concluding, the Fourth Circuit found that although § 2254 mandates the exhaustion of habeas claims and also mandates diligence by the petitioner in developing the factual record before the state court, "when a state court forecloses further development of the factual record, it passes up the opportunity that exhaustion ensures" and de novo review of a petitioner's claims by the federal district court may be appropriate. Id. at 552, 555-56.

Following the Fourth Circuit's decision in Winston I, the United States Supreme Court issued its opinion in Cullen v. Pinholster, 131 S. Ct. 1388 (2011), which addressed the deference federal courts must generally give to a state court's habeas decisions. Specifically, the Supreme Court held that "review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." Pinholster, 131 S. Ct. 1388, 1398, 179 L. Ed. 2d 577 (2011). The Supreme Court further stated as follows:

> Section 2254(d)(1) refers, in the past tense, to a state-court adjudication that "resulted in" a decision that was contrary to, or "involved" an unreasonable application of, established law. This backward-looking language requires an examination of the state-court decision at the time it was made. It follows that the record under review is limited to the record in existence at that same time *i.e.*, the record before the state court.

Id. For a time, the holding in Pinholster appeared to call into question the Fourth Circuit's analysis and holding in Winston I regarding the extent to which federal district courts may

9

consider new evidence in federal habeas proceedings. In the wake of <u>Pinholster</u>, however, the Fourth Circuit expressly found that "nothing in <u>Pinholster</u> indicates that the [Supreme] Court's disposition casts doubt on—much less overrules—our discussion of the adjudicated-on-the-merits requirement in <u>Winston I</u>." <u>Winston v. Pearson ("Winston II")</u>, 683 F.3d 489, 501-02 (4th Cir. 2012); <u>Richardson v. Branker</u>, 668 F.3d 128, 152 n.26 (4th Cir. 2012) (citing with approval the holding in <u>Winston I</u> that the state court did not adjudicate the petitioner's claims on the merits because "Virginia state courts did not afford Winston an evidentiary hearing and thus passed on the opportunity to adjudicate [his] claim on a complete record" (internal quotations omitted)). As such, the holding in <u>Winston I</u> endures within the Fourth Circuit such that a "state court's refusal to allow [the petitioner] to develop the record, combined with the material nature of the evidence that would have been produced in state court were appropriate procedures followed, render[s] its decision unbefitting of classification as an adjudication on the merits." <u>Winston II</u>, 683 F.3d at 502.

In the present case, as noted above, Petitioner presented to the MAR Court a copy of a North Carolina "Transcript of Plea" form signed by both Petitioner and Mr. Jennings, which was dated October 25, 2007, and which contained a written provision that Petitioner would receive a single consolidated sentence of 133 to 169 months in exchange for his guilty plea. Petitioner also presented the altered "Transcript of Plea" form entered on the docket on November 27, 2007, which did not include the consolidated sentence provision and which Petitioner argued was altered without his knowledge. Furthermore, Petitioner repeatedly stated in its Motion for Appropriate Relief, and attached Affidavit, that Mr. Jennings had promised

Petitioner that he would receive a single sentence of 133 to 169 months if he accepted the plea agreement proposed by the State, as reflected in the "Transcript of Plea" form signed on October 25, 2007. Moreover, Petitioner did in fact sign the original "Transcript of Plea" form containing the consolidated sentence provision on October 25, 2007. Petitioner further stated that on November 26, 2007, the day before his plea hearing took place, Petitioner believed that he was entering the "Transcript of Plea" form he had in fact signed on October 25, 2007, which contained the consolidated sentence provision. In addition, Petitioner stated that when he signed the altered "Transcript of Plea" form on November 26, 2007, he believed, based on information provided by Mr. Jennings, that only the page Petitioner signed was being altered, and that the page containing the consolidated sentence provision, a page that did not require a separate signature, remained the same. In light of his contentions and apparent confusion regarding the altered "Transcript of Plea" form, Petitioner requested an evidentiary hearing in two separate places within his Motion for Appropriate Relief. The MAR Court did not, however, grant an evidentiary hearing and, as this Court found in its September 14, 2009 Order, the MAR Court did not resolve the circumstances surrounding the alteration of the "Transcript of Plea" form at issue in this case.

Given the information provided to the MAR Court, this Court now finds that despite Petitioner's efforts to set forth and support his claims within his Motion for Appropriate Relief, the MAR Court failed to properly develop the factual record to the extent that Petitioner raised claims that his plea was not voluntary and knowing because it was based on an altered "Transcript of Plea" form, or that he received ineffective assistance of counsel with respect to

11

the alteration of the "Transcript of Plea" form. Furthermore, as discussed in more detail herein, the Court finds that the evidence adduced at the evidentiary hearing held on December 17, 2009, was material to the resolution of those claims. As such, the Court concludes that Petitioner's claims that he did not knowingly and voluntarily enter his guilty plea and that he received ineffective assistance of counsel related to the alteration of the "Transcript of Plea" form were not adjudicated on the merits in state court. As such, the Court will consider the evidence presented at the evidentiary hearing and will review Petitioner's claims, described above, de novo in light of that evidence.

III. PETITIONER'S REMAINING CLAIMS

As noted above, the Court denied Respondent's Motion for Summary Judgment only to the extent that Petitioner contends that his plea was not voluntary and knowing because it was based on an altered "Transcript of Plea" form or that he received ineffective assistance of counsel with respect to the alteration of the "Transcript of Plea" form. The Court will now address each of Petitioner's remaining claims.

A. Voluntary and Knowing Guilty Plea

To the extent that Petitioner contends that his guilty plea was not voluntary and knowing, Petitioner appears to base such a claim on his contention that the State, through Mr. Wood, unilaterally altered the "Transcript of Plea" form without Petitioner's consent or understanding. However, based on the Habeas Petition, the evidence presented at the evidentiary hearing, and the parties' supplemental briefing on this matter, the Court finds that Petitioner has failed to support any claim that the State acted improperly with regard to the

12

alteration of the "Transcript of Plea" form in this case. Rather, the evidence suggests that Mr. Wood made every effort to inform Mr. Jennings of the terms of the original Plea Offer and the deadlines for accepting such Offer. In addition, the evidence suggests that on November 26, 2007, Mr. Wood informed Mr. Jennings that he would no longer extend the original Plea Offer to Petitioner and Mr. Wood made alterations to the "Transcript of Plea" form in Mr. Jennings' presence with the understanding that Mr. Jennings would then explain such alterations to Petitioner. The Court finds that there is no evidence on the record that the State, unilaterally or otherwise, altered the "Transcript of Plea" form again after Petitioner signed it on November 26, 2007. Therefore, the Court will deny Petitioner's request for habeas relief to the extent that he contends that his guilty plea was not voluntary or knowing based on alleged misconduct by the State. As such, the Court will now address Petitioner's ineffective assistance of counsel claim.

> B.    Ineffective Assistance of Counsel

To the extent that Petitioner raises a Sixth Amendment ineffective assistance of counsel claim with respect to the alteration of the "Transcript of Plea" form, such a claim must be examined under the two-pronged test set forth in Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). See Lafler v. Cooper, 132 S. Ct. 1376, 1384, 182 L. Ed. 2d 398 (2012) (noting that "[d]uring plea negotiations defendants are entitled to the effective assistance of competent counsel," and that the two-pronged Strickland test "applies to challenges to guilty pleas based on ineffective assistance of counsel" (internal quotations and citations omitted)). For Petitioner to prevail on an ineffective assistance of counsel claim, he

must show (1) that his attorney's performance fell below an objective standard of reasonableness, and (2) that he suffered actual prejudice. <u>Strickland</u>, 466 U.S. at 687, 104 S. Ct. 2064. Before addressing either <u>Strickland</u> prong, however, the Court notes that Respondent contends that Petitioner, in his supplemental briefing before this Court, has impermissibly attempted to raise a second ineffective assistance of counsel claim in addition to the ineffective assistance of counsel claim raised in his Motion for Appropriate Relief. Specifically, Respondent contends that Petitioner attempts to raise an ineffective assistance of counsel claim based on Mr. Jennings' alleged failure to inform Petitioner of the State's deadlines for accepting the original Plea Offer and failure to inform Petitioner on October 25, 2007, that Mr. Jennings believed the State had withdrawn the original Plea Offer on or before that day. Respondent further contends that such claim is substantively different than the ineffective assistance of counsel claim raised in Petitioner's Motion for Appropriate relief and is, therefore, procedurally barred for failure to raise such a claim for the first time in state court. Respondent contends that the only ineffective assistance of counsel claim that the Court can properly consider at this time is Petitioner's claim that Mr. Jennings was ineffective for allowing the "Transcript of Plea" form to be altered without Petitioner's knowledge.

In considering Respondent's position in this regard, the Court finds that Petitioner has not attempted to raise a substantively different ineffective assistance of counsel claim by discussing evidence that Mr. Jennings failed to inform Plaintiff of the deadlines to accept the original Plea Offer or of the State's potential or actual withdrawal of the original Plea Offer. Instead, the Court finds that the ineffective assistance of counsel claim raised in Petitioner's

14

Motion for Appropriate Relief encompasses Mr. Jennings' conduct, or lack thereof, throughout the plea bargaining process in this case, from Mr. Jennings' appointment as counsel for Petitioner, up to and including the plea hearing held on November 27, 2007. In so finding, the Court notes that the circumstances surrounding how and why Petitioner ultimately signed two separate "Transcript of Plea" forms containing drastically different terms form the basis of Petitioner's claim that Mr. Jennings provided ineffective assistance of counsel with regard to the alteration of the "Transcript of Plea" form ultimately filed in state court. As such, the Court will proceed under the Strickland analysis with regard to a single ineffective assistance of counsel claim that encompasses the plea bargaining process from the initial appointment of Mr. Jennings as counsel for Petitioner, up to and including the plea hearing on November 27, 2007.

1. *Strickland* Performance Prong

With regard to the first prong of the Strickland analysis, the Court finds that Mr. Jennings' performance in this case fell below an objective standard of reasonableness. In so finding, the Court notes that although Mr. Jennings informed Petitioner of the terms of the original Plea Offer, including the consolidated sentence provision, sometime in August or September of 2007, Mr. Jennings did not meet with Petitioner again to discuss the original Plea Offer until October 25, 2007. Between August and October of 2007, Mr. Wood scheduled and made Mr. Jennings aware of several court dates, and further made Mr. Jennings aware that Petitioner needed to timely accept or reject the original Plea Offer in advance of those dates. However, Mr. Wood did not hear from Mr. Jennings, regarding the original Plea Offer, or otherwise, on or before any of the scheduled court dates in August, September, or October of

15

2007. Moreover, the Court finds credible Petitioner's testimony that he was not made aware of the scheduled court dates in August, September, or October, or of any deadlines by which he needed to accept or reject the original Plea Offer.

When Mr. Jennings met with Petitioner on October 25, 2007, after nearly two months without any contact or communication, both Mr. Jennings and Petitioner signed the "Transcript of Plea" form provided by Mr. Wood, which contained the provision that Petitioner would receive a single consolidated sentence of 133 to 169 months in exchange for his guilty plea. However, Mr. Jennings, without explanation, failed to present that signed "Transcript of Plea" form to Mr. Wood until November 26, 2007, the day Petitioner was scheduled to begin a trial. In fact, the evidence shows that Mr. Jennings did not have any contact or communication with either Mr. Wood or Petitioner between October 25, 2007, and November 26, 2007. Mr. Wood testified that because he had not timely heard from Mr. Jennings regarding Petitioner's acceptance of the original Plea Offer by early November of 2007, the State had subpoenaed witnesses to appear at Petitioner's scheduled trial and that a jury pool was available for jury selection on November 26, 2007. There is no evidence on the record that Mr. Jennings had similarly prepared for a trial scheduled to begin on November 26, 2007.

Mr. Jennings testified that although he did not believe the State would accept the signed "Transcript of Plea" form on November 26, 2007, Mr. Jennings presented such document to Mr. Wood on that date as a tactical move. Based on all of the evidence, however, it appears that Mr. Jennings had not made any preparations with Petitioner to begin a trial on November 26, 2007, in the event that Mr. Wood declined to accept the signed "Transcript of Plea" form and

16

declined to offer an alternate plea agreement. In that regard, the Court finds credible Petitioner's testimony that Mr. Jennings did not inform him that the State likely would not accept the "Transcript of Plea" form that Petitioner signed on October 25, 2007, and which contained the consolidated sentence provision. Furthermore, the Court finds credible Petitioner's testimony that he believed he was at the courthouse on November 26, 2007, to enter the a guilty plea pursuant to the original Plea Offer contained in the "Transcript of Plea" form that he had signed on October 25, 2007, and not to go to trial in the event that the State did not accept that agreement as written. As such, the Court finds that the primary, if not the exclusive, reason Petitioner even needed to consider entering a guilty plea pursuant to a "Transcript of Plea" form that differed in *any* respect from the "Transcript of Plea" form Petitioner signed on October 25, 2007, was Mr. Jennings' lack of communication and contact with both Petitioner and Mr. Wood up to and including November 27, 2007. The Court finds such lack of contact and communication in the circumstances to be objectively unreasonable.

Furthermore, the Court finds credible Petitioner's testimony that he believed that only the first page, front and back, of the "Transcript of Plea" form was altered on November 26, 2007, and that the consolidated sentence provision remained intact. In so finding, the Court notes that the State places a great deal of emphasis on Mr. Jennings' testimony that on November 26, 2007, Petitioner asked Mr. Jennings about whether the sentencing Judge would "boxcar" Petitioner, thereby showing, according to the State, that Petitioner understood that the consolidated sentence provision was no longer a part of the plea agreement he would be entering on November 27, 2007. However, the Court finds Mr. Jennings' testimony regarding

17

such conversation with Petitioner to be subject to question. In that regard, the Court notes that during his testimony at the evidentiary hearing, Mr. Jennings recalled few, if any, details about his time representing Petitioner. Rather, Mr. Jennings spoke only to his habit and practice with regard to representing clients, such as Petitioner, throughout much of the proceedings.[2] In addition, Mr. Jennings' testimony wavered regarding whether he believed the State had withdrawn the original Plea Offer containing the consolidated sentence provision prior to, or after, October 25, 2007, and he could not recall what he told Petitioner regarding the purported withdrawal. As such, the Court finds it questionable that Mr. Jennings was able to recall, verbatim, statements made by Petitioner on November 26, 2007.

In contrast, the weight of the evidence in this case supports Petitioner's contention that he, at all times, intended to enter a guilty plea pursuant a plea agreement containing a consolidated sentence of 133 to 169 months, and, further, that he believed he was entering an agreement that included that specific sentencing provision on November 27, 2007. In addition to the undisputed evidence that Petitioner and Mr. Jennings in fact signed a "Transcript of Plea" form containing the consolidated sentence provision at issue on October 25, 2007, Petitioner

---

[2] The Court notes that Mr. Jennings initially could not recall when he was appointed to represent Petitioner, when he first met Petitioner, or how many times he met with Petitioner during the time period relevant to this case. The Court further notes that the State recalled Mr. Jennings at the end of the other evidence for rebuttal testimony about certain dates. At that time, Mr. Jennings testified that he recalled speaking with Petitioner "sometime shortly before" the September 5, 2007, date provided by Petitioner as their first meeting. In addition, Mr. Jennings testified that he was "fairly certain" that he talked to Petitioner one time prior that meeting. However, Mr. Jennings was not sure of the date of either meeting. Such vague statements about the timing of his meetings with Petitioner, and the discussions held therein, persisted throughout Mr. Jennings' testimony. (Evidentiary Hr'g Tr. 102:24-104:24).

presented the testimony of his former girlfriend, Victoria Cheek, who testified that Petitioner wrote her letters indicating his intent to accept the original Plea Offer with the sentencing provision of 133 to 169 months, or 11 to 14 years. Petitioner also presented Ms. Cheek's responsive letters to Petitioner indicating the same. In addition, Petitioner presented the testimony of his friend Darrell McCaroll who also testified that Petitioner had spoken to him about accepting the original Plea Offer that included the consolidated sentence provision. Furthermore, although the State emphasizes that Petitioner answered "yes" to the state court Judge's question regarding whether dismissal of certain charges was the only agreement between the State and Petitioner, the transcript of the plea hearing reveals that at the end of the sentencing proceeding, Petitioner made statements indicating his confusion regarding the sentence actually imposed by the state court Judge. Specifically, after the Judge imposed the sentence and then asked if there was anything else from the defendant, Petitioner stated "I'm not – I think I'm doing – I don't know. I don't know what I'm doing right now. I'm doing –." (Plea Hr'g Tr. 64:24-25, [Doc. #10-3]). The transcript of the plea hearing further reveals that the state court Judge did not clarify the nature of the sentence imposed, that is, three consecutive terms of 133 to 169 months, until Petitioner had been removed from the courtroom. (Plea Hr'g Tr. 65:7-8, [Doc. #10-3]). Based on the foregoing, the Court finds that the evidence, taken as a whole, supports Petitioner's contention that, based on the information presented to him by Mr. Jennings, Petitioner believed he was pleading guilty pursuant to a plea agreement substantially the same as that which he signed on October 25, 2007, and which included a single consolidated sentence of 133 to 169 months. Therefore, based on all of the

19

evidence before the Court, the Court finds that Petitioner has shown that Mr. Jennings' performance fell below an objective standard of reasonableness under the first Strickland prong with regard to the alteration of the "Transcript of Plea" form.

2.    <em>Strickland</em> Prejudice Prong

With regard to the second prong of the Strickland analysis, that is, whether Petitioner suffered actual prejudice, Petitioner generally "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694, 104 S. Ct. at 2068. Where, as here, Petitioner raises an ineffective assistance of counsel claim in the context of a plea offer, Petitioner must show that there is a reasonable probability that he would have accepted the original Plea Offer containing the consolidated sentence provision had he been afforded effective assistance of counsel. See Missouri v. Frye, 132 S. Ct. 1399, 1409-10, 182 L. Ed. 2d 379 (2012) ("In a case, such as this, where a defendant pleads guilty to less favorable terms and claims that ineffective assistance of counsel caused him to miss out on a more favorable earlier plea offer, Strickland's inquiry into whether 'the result of the proceeding would have been different,' requires looking not at whether the defendant would have proceeded to trial absent ineffective assistance but whether he would have accepted the offer to plead pursuant to the terms earlier proposed." (internal citation omitted)). In addition, Petitioner "must also show that, if the prosecution had the discretion to cancel [the original Plea Offer] or if the trial court had the discretion to refuse to accept it, there is a reasonable probability neither the prosecution nor the trial court would have prevented the offer from being accepted or implemented." Id. at 1410.

In light of these principles, the Court first notes, as discussed in more detail above, that the evidence clearly shows that Petitioner would have, and in fact did, accept the original Plea Offer with the favorable consolidated sentence provision of 133 to 169 months, by signing the "Transcript of Plea" form on October 25, 2007. Furthermore, based on the testimony of Victoria Cheek and Darrell McCaroll, the Court finds that Petitioner was prepared to accept the original Plea Offer in September of 2007, but that Petitioner did not have the opportunity to do so in light of Mr. Jennings' unreasonable failure to contact him until October 25, 2007. As such, the Court turns to the question of whether the prosecution or the trial court *could have* prevented the original Plea Offer from being accepted or implemented and, if so, whether Petitioner has shown that there is a reasonable probability that neither the prosecution nor the trial court *would have* prevented the original Plea Offer from being accepted or implemented. In that regard, the Court first notes that under North Carolina law, "[t]he State may withdraw from a plea bargain arrangement at any time prior, but not after, the actual entry of the guilty plea by defendant." State v. Collins, 300 N.C. 142, 148, 265 S.E.2d 172, 176 (1980) (holding that "there is no absolute right to have a guilty plea accepted"). Moreover, a trial judge has discretion regarding whether to accept or reject a plea arrangement where the prosecutor recommends a particular sentence as follows:

> Before accepting a plea pursuant to a plea arrangement in which the prosecutor has agreed to recommend a particular sentence, the judge must advise the parties whether he approves the arrangement and will dispose of the case accordingly. If the judge rejects the arrangement, he must so inform the parties, refuse to accept the defendant's plea of guilty or no contest, and advise the defendant personally that neither the State nor the defendant is bound by the rejected arrangement. The judge must advise the parties of the reasons he rejected the arrangement and afford them an opportunity to modify the arrangement accordingly. Upon rejection of the plea arrangement by the judge the

> defendant is entitled to a continuance until the next session of court. A decision by the judge disapproving a plea arrangement is not subject to appeal.

N.C. Gen. Stat. 15A-1023(b); see State v. Santiago, 148 N.C. App. 62, 68, 557 S.E.2d 601, 605 (2001) ("A plea arrangement involving a recommended sentence must have judicial approval before it is effective."). Given the discretion regarding the acceptance of plea offers afforded to the prosecution and the trial court in North Carolina, the question in this case becomes whether Petitioner has shown that there is a reasonable probability that neither the prosecution nor the trial court would have prevented the acceptance or implementation of the original Plea Offer in this case.

Based on the present record, the Court cannot determine whether there is a reasonable probability that neither the prosecution nor the trial court would have prevented the acceptance or implementation of the original Plea Offer had Mr. Jennings acted competently in this case. Therefore, based on Respondent's suggestion in his supplemental briefing before this Court, the Court will remand this case for further proceedings. In that regard, the Court will order that within sixty (60) days of the date of this Memorandum Opinion and Order and the Judgment entered contemporaneously herewith, the State shall commence proceedings in the proper forum to determine the limited question of whether there is a reasonable probability that neither the prosecution nor the trial court would have prevented the acceptance or implementation of the original Plea Offer, had such offer been presented for acceptance and implementation between September 5, 2007, the date on which the Court finds that Mr. Jennings first addressed

the original Plea Offer with Petitioner, and November 27, 2007, the date of the plea hearing.[3]

IV.    CONCLUSION

Based on the foregoing, IT IS ORDERED that to the extent that Petitioner asserts a claim in his Habeas Petition that his guilty plea was not voluntarily or knowingly entered based on misconduct by the State in altering the "Transcript of Plea" form, such a claim is DENIED, as set forth herein.  IT IS FURTHER ORDERED that to the extent that Petitioner asserts a claim for ineffective assistance of counsel with respect to the alteration of the "Transcript of Plea" form, as discussed herein, such claim is REMANDED for further proceedings.  In that regard, IT IS ORDERED that within sixty (60) days after the date of this Memorandum Opinion and Order and the Judgment entered contemporaneously herewith, the State shall commence proceedings in the proper forum to determine the limited question of whether there is a reasonable probability that neither the prosecution nor the trial court would have prevented the acceptance or implementation of the original Plea Offer, had such offer been presented for acceptance and implementation at any time between September 5, 2007, the date on which the Court finds that Mr. Jennings first addressed the original Plea Offer with Petitioner, and November 27, 2007, the date of Petitioner's plea hearing.

---

[3] If the evidence adduced at the additional proceedings ordered herein shows that there is a reasonable probability that neither the prosecution nor the trial court would have prevented the acceptance or implementation of the original Plea Offer during the relevant time period, then Petitioner's ineffective assistance of counsel claim would succeed under the Strickland analysis, and Petitioner would be subject to resentencing in state court pursuant to the terms of the original Plea Offer, including the consolidated sentence provision of 133 to 169 months. If, however, the evidence does not show such a reasonable probability, Petitioner's ineffective assistance of counsel claim would fail under the Strickland analysis, and Petitioner would not be entitled to further relief.

23

A Judgment will be entered contemporaneously herewith.

This, the 31st day of May, 2013.

United States District Judge